UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRANDY MCCAIN,

      Plaintiff,

v.                                        Case No.  8:19-cv-2762-T-SPF

ANDREW M. SAUL,
Commissioner of the Social
Security Administration,

      Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for period of disability and disability insurance benefits ("DIB").  As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed.

    **I.**      **Procedural Background**

Plaintiff filed an application for period of disability and DIB (Tr. 155-56).  The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 58, 71).  Plaintiff then requested an administrative hearing (Tr. 86).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 26-47).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denied Plaintiff's claims for benefits (Tr. 12-19).  Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-3).  Plaintiff then timely filed

a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Factual Background and the ALJ's Decision

Plaintiff was born on March 14, 1973 and was 45 years old on her administrative hearing date (42 on her alleged onset date) (Tr. 27, 155). Plaintiff claimed disability beginning January 13, 2016, due to anxiety, depression, bipolar disorder, and bulimia (Tr. 201). She graduated high school and earned some college credits at Delaware Valley College and the College of Southern Maryland (Tr. 314). She also attended trade school and got her welding certificate. After working as a hairdresser out of high school, Plaintiff enlisted in the Navy and was active duty from 1993-1998, with an MOS as a turbine electrical systems technician (*Id.*). In 1998, Plaintiff left active duty and joined the Navy Reserve until 2002. She received an honorable discharge as an E3 after she had her second child (she served long enough to make E4, but her obesity disqualified her) (*Id.*).

Since leaving the Navy in 2002, Plaintiff's experience in the private sector includes work as an avionics technician (repairing ground support equipment transported on aircraft carriers), a heavy equipment repairperson (repairing and welding manufacturing equipment, hydraulic presses, and tractors), a test technician (building and testing commercial and military electrical converters), and an electronic parts inspector (Tr. 30-32). She testified she had trouble getting along with people at these jobs and "made a lot of mistakes. I was unable to concentrate." (Tr. 34) She elaborated: "I couldn't keep up with the work load. I did not have enough breaks." (*Id.*). Plaintiff was let go in January 2016 from her job as an avionics technician due to poor performance and personality

changes. Her supervisors told her she was distant and distracted and could not complete her work (Tr. 30).

Plaintiff's first marriage ended soon after her 2002 discharge from the military (*see* Tr. 315). She eventually remarried in 2014 and moved with her second husband from Alabama to Florida (*Id.*). Plaintiff received medical treatment, including mental health services for anxiety, depression, and bulimia, at the VA in Bay Pines. She testified her anxiety symptoms include "tight chest, irritability, not knowing what to do with myself, just unable to function to take care of things, you know, like I said, I don't get along with people." (Tr. 35). Some days she feels so anxious "I can't even do my housework or take care of my pets." (Tr. 36). She starts tasks she forgets to finish (*Id.*). She goes to the gym near her house regularly and drives her car two or three days a week to run errands or go to therapy appointments.

In rendering his October 11, 2018 administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2021 (her date last insured, or "DLI," for DIB purposes) and had not engaged in substantial gainful activity since January 13, 2016, her alleged onset date (Tr. 14). After conducting a hearing on July 26, 2018, and reviewing the evidence of record, the ALJ determined Plaintiff had the severe impairment of anxiety (*Id.*). Notwithstanding this impairment, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15). The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following

nonexertional limitations: the claimant is limited to having occasional contact with supervisors, coworkers, and the general public." (Tr. 16). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 17).

Considering Plaintiff's impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as an electrical inspector, a circuit board assembler, and a machine mechanic (Tr. 18). The ALJ found Plaintiff not disabled (Tr. 19).

### III. Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a

"sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.

*Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.    Analysis**

Plaintiff argues the ALJ did not closely scrutinize the VA's decision that Plaintiff is 70% disabled,[1] as required by the regulations and case law in effect when she filed her claim (Doc. 18 at 11-14). The Commissioner retorts that the ALJ considered Plaintiff's VA disability rating and properly discounted it (*Id.* at 14-23). The undersigned agrees with Plaintiff: the ALJ's consideration of the VA's disability determination is not supported by substantial evidence.

---

[1] Although Plaintiff's combined service-connected disability rating was 70%, the VA considered her 100% unemployable and paid her at that rate (Tr. 145). The ALJ acknowledged this: "The Department of Veterans Affairs paid the claimant at the 100 percent rate because they considered her 'unemployable' due to service connected disabilities." (Tr. 18).

As the ALJ in this case noted, the VA's guidelines pertaining to disability determinations vary from the SSA's sequential analysis, and the VA's assessment is not binding on the Commissioner. *See* 20 C.F.R. § 404.1504.[1] But the ALJ omits that, in August 2016 when Plaintiff filed her claim, Social Security regulations, Social Security Ruling (SSR) 06-3p, and Eleventh Circuit precedent instructed the ALJ to assign "great weight" to the VA's disability rating. *See* 20 C.F.R. § 404.1504; SSR 06-3p ("the adjudicator should explain the consideration given to [a disability decision by other governmental agencies] in the note of decision for hearing cases"); *Falcon v. Heckler,* 732 F.2d 827, 831 (11th Cir. 1984) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983)) (holding that "[t]he findings of disability by another agency, although not binding on the [Commissioner] are entitled to great weight"); *Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 914 (11th Cir. 2015) ("A VA rating, while not binding on the SSA, is evidence that should be considered and is entitled to great weight") (citation omitted).

---

[1] The SSA has amended this regulation and rescinded SSR 06-03p for claims filed *after* March 27, 2017 (Plaintiff filed her claim on August 22, 2016). The new regulation provides that the SSA will not provide any analysis of a decision made by any other governmental agency or a non-governmental entity about whether a claimant is disabled, blind, employable, or entitled to any benefits. *See* 20 C.F.R. § 404.1504; Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263 (Mar. 27, 2017). In rescinding SSR 06-03p, the SSA noted that for claims filed on or after March 27, 2017, adjudicators will not explain how they weighed disability decisions from other governmental agencies and non-governmental entities, because this evidence is neither valuable nor persuasive. 82 Fed. Reg. 15263. The undersigned analyzes Plaintiff's claims pursuant to the earlier regulation. In any event, the Court is bound by Eleventh Circuit precedent even in the face of new regulations. *See Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661-62 (11th Cir. 2007) (Eleventh Circuit precedent that a VE's testimony trumps an inconsistent DOT provision prevails over a later-published social security ruling to the contrary); footnote 2, *infra*.

"Great weight" does not mean controlling, but "the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016).

An ALJ's reference to and discussion of medical records from the VA does not substitute for consideration of the VA's disability decision itself. *See Williams v. Barnhart*, 180 F. App'x 902 (11th Cir. 2006). Before 20 C.F.R. § 404.1504 (and its counterpart for SSI purposes, 20 C.F.R. § 416.904) was amended, the clear trend in case law from this district was to reverse and remand when the ALJ has not adequately considered the VA's disability rating. Put another way, "[t]he Eleventh Circuit's requirement of 'great weight,' 'close scrutiny,' and 'serious consideration' is not met by a gratuitous passing reference." *Bruton v. Comm'r of Soc. Sec.*, No. 6:16-cv-1209-Orl-37DCI, 2017 WL 4174314, at *2 (M.D. Fla. Sept. 21, 2017). Instead, the ALJ must specifically address the merits of the VA's disability rating. *See Williams*, 180 F. App'x 902 ("While we recognize that the ALJ's prior decision addressed at some length [the claimant's] VA medical evidence, nonetheless, in its decision the ALJ should specifically also consider and address the VA's Rating Decision itself.").

In certain clear cases courts have found that an ALJ's decision implicitly complies with the requirement to place great weight on the VA's decision if it is obvious the ALJ closely scrutinized it. In *Boyette v. Commissioner of Social Security*, 605 F. App'x 777, 778-79 (11th Cir. 2015), the Eleventh Circuit upheld an ALJ's decision that did not assign express weight to the VA's disability rating, because the ALJ "considered and assigned

8

weight to the VA examiners' opinions, VA primary care provider opinions, and VA treatment records." And in *Adams v. Commissioner of Social Security*, 542 F. App'x 854, 856-57 (11th Cir. 2013), the court found that an ALJ who did not expressly assign "great weight" to the VA's rating nonetheless "seriously considered it in making his own determination that Adams was not disabled." *See also Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009) (providing that an ALJ's finding regarding a VA's disability rating may be implicit).

In sum, a court may uphold an ALJ's decision that closely scrutinizes yet implicitly weighs a VA disability rating or remand an ALJ's decision that examines the VA's medical records yet makes only a passing reference to the VA's disability rating. This results in case-by-case determinations that can be difficult to reconcile (which may have motivated the SSA to amend its regulations). Against this legal landscape, the undersigned agrees with Plaintiff that the ALJ did not abide either the Eleventh Circuit requirement that he assign "great weight" to the VA disability decision or SSR 06-3p (applicable at the time of his decision).[2]

The ALJ condensed hundreds of pages detailing Plaintiff's mental health treatment at the VA (all of Plaintiff's treatment occurred at the VA) into a few paragraphs of mention

---

[2] Social Security Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same. *Heckler v. Edwards*, 465 U.S. 870, 874 n. 3 (1984); *see also Dickson v. Comm'r of Soc. Sec.*, No. 5:13-cv-48-Oc-DNF, 2014 WL 582885, *4 (M.D. Fla. Feb. 13, 2014) (quoting *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010)) ("Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference ...").

in his eight-page opinion (Tr. 17). Then, in one paragraph, the ALJ acknowledged Plaintiff's 70% VA disability rating and that she receives benefits "at the 100 percent rate" because the VA considers her unemployable (Tr. 18). The ALJ stated:

> However, I remind the reader that the VA uses different disability standards than SSA. Moreover, a disability determination by another agency or private employer is not determinative of the issue of whether the claimant is disabled under the Act because that agency's or employer's determination is based on its rules. I must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that the claimant is disabled or blind is not binding on the Social Security Administration (20 CFR 404.15[0]4 and 416.904 and SSR 06-03p). I assign the opinion little weight.

(*Id.*). Although true, these statements do not show the ALJ placed "great weight" on Plaintiff's 70% VA disability rating. To the contrary, this brief explanation of the ALJ's decision to discount Plaintiff's VA disability rating is superficial and inadequate.

The records on which the VA's disability rating is based begin in August 2015, when Plaintiff sought treatment for her anxiety and bulimia from psychologist Debra Gleason, Ph.D. and psychiatrist David Harris, D.O. at the Palm Harbor VA Clinic (Tr. 313-20). She recounted her attempt to commit suicide years earlier by overdosing on pills, when her first marriage was unraveling (Tr. 318). According to Plaintiff, leading up to that incident, she was not speaking and was cutting herself (Tr. 315). She was diagnosed as bipolar with borderline personality disorder and was in and out of mental health wards for two to three months. Since then, Plaintiff had been binge eating and purging as a way of coping with stress (*Id.*). In August 2015, she reported using laxatives and diuretics after overeating to control her weight, and Dr. Harris diagnosed her with anxiety (Tr. 318). Plaintiff felt out of control and hopeless.

A psychological assessment and questionnaire completed by Kelly Gorman, Psy.D. and psychiatrist Gayani Leonard, M.D. of the Bay Pines VA Healthcare System in August 2016 confirmed Plaintiff's diagnosis of generalized anxiety disorder (Tr. 393-410). She reported poor motivation, depressed mood, isolation, and poor sleep (Tr. 402). She obsessively exercised (sometimes up to three hours per day) to counter her binge eating (Tr. 399). She was still taking laxatives three to four days per week to lose weight (Tr. 400). She was fired from her job in January 2016 due to "poor performance." (Tr. 396). Plaintiff admitted to suicidal thoughts but said she "gets through it" after a while and did not have a specific plan to commit suicide (Tr. 407). During anxiety attacks, her chest tightened, her skin crawled, it was hard to breathe, and she did not know what to do with herself (Tr. 405-06).

With the help of weekly therapy, both one-on-one with Vicki Tangney, LCSW, and in a group with Saarah Kison, Ph.D., Plaintiff learned coping mechanisms. For example, amid a spike in her anxiety level in mid- to late 2016, to deal with her symptoms she started painting and training her dog (Tr. 552, 559). By October 2016, psychiatrist Robert Wilkins, M.D. noted he had stabilized Plaintiff's symptoms with increased doses of Lexapro, Topamax, hydroxyzine, and Ambien (Tr. 552). But in December 2016, despite "doing good work" in therapy and Plaintiff characterizing her own symptoms as mild, she was crying a lot, she stayed in bed all day over the holidays, and she was having suicidal thoughts (Tr. 505, 510).

By February 2017, Plaintiff was in "acute distress." (Tr. 872). Her treatment provider noted, "[s]he frequently has suicidal thoughts, but now she is intent on harming

11

herself." (*Id*.). Plaintiff told the admitting nurse at the VA hospital, "I took 4-5 Ambien yesterday so I didn't have to deal with my husband[,]" and "I'm always thinking of suicide but I'm feeling more like doing it. I'm thinking of taking a whole bottle of all my pills if I was going to attempt to kill myself. . . . I haven't been able to rest at all. I drove myself here. I just know I need help right now." (*Id*.) She stayed in the hospital for three days until she felt stabilized on her medication and was discharged home.

After this hospital stay, Plaintiff's psychiatrist changed from Dr. Wilkins to Lia Nardone, M.D., and Plaintiff continued attending one-on-one and group therapy. In May 2017, Dr. Nardone assessed Plaintiff with bipolar disorder, borderline personality disorder, generalized anxiety disorder, and bulimia (Tr. 1053). In June 2018, Dr. Nardone completed a medical source statement at Plaintiff's counsel's request, opining that in an eight-hour work day, Plaintiff will be off-task due to psychiatric symptoms more than 15% of the time, she will need to take unscheduled breaks, and she will be absent from work more than two days per month (Tr. 837). Regarding Plaintiff's ability to work full time, Dr. Nardone wrote: "[Plaintiff is] unable to tolerate FT work-related stressors due to high risk of decompensation & interpersonal diff[erences] interfering [with] her ability to perform at work or attend regularly." (*Id*.)

Considering this treatment history, the ALJ's explanation that he assigned little weight to the VA's disability rating because the VA uses different disability standards than the SSA is not the "close scrutiny" and "serious consideration" the Eleventh Circuit requires. *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) (per curiam); *Brown-Gaudet-Evans*, 673 F. App'x at 904; *Beshia v. Comm'r of Soc. Sec.*, 328 F.Supp.3d 1341, 1347 (M.D.

12

Fla. 2018) ("Summarily rejecting a VA disability rating because it is non-binding in the SSA context and relies on different criteria constitutes legal error."). The ALJ discounted Dr. Nardone's opinion as "inconsistent with the findings from mental status examinations" and summarized Plaintiff's psychiatric treatment at the VA by emphasizing details like she had "maintained, normal, or good eye contact," and appeared "attentive during therapy sessions." (Tr. 17) The ALJ also stressed that Plaintiff "was only hospitalized for psychologically based symptoms on one occasion during the period at issue." (*Id.*) Plaintiff does not challenge this. But, the ALJ's decision to assign little weight to Dr. Nardone's opinion, combined with the ALJ's parsing of Plaintiff's mental health records, underscores the ALJ's cursory treatment of Plaintiff's VA disability rating and its impact on the ALJ's analysis of Plaintiff's DIB application.

Ironically, the ALJ relies on Plaintiff's VA medical records for his conclusion that Plaintiff is not disabled yet assigns little weight to the VA's decision that she is. The ALJ offers no meaningful discussion of why Plaintiff's 70% VA disability rating still qualified her for her past relevant work at all exertional levels under SSA guidelines. This adds up to legal error, especially because the VA's decision was based on the same underlying mental conditions at issue in the SSA proceedings. Substantial evidence to conclude the ALJ carefully considered and closely scrutinized Plaintiff's VA disability rating does not exist.

Accordingly, after consideration, it is hereby

ORDERED:

1. The Commissioner's decision is reversed.

2. The Clerk is directed to enter final judgment in Plaintiff's favor and close the case.

**ORDERED** in Tampa, Florida, on February 23, 2021.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE